# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LISA FIJALKOWSKI,            :

                     :  **Case No. 2:17-cv-0195**

      **Plaintiff,**      :

                     :  **CHIEF JUDGE ALGENON L. MARBLEY**

     **v.**             :

                     :  *Magistrate Judge Jolson*

BELMONT COUNTY BOARD OF   :
COMMISSIONERS, et al.,        :

                     :

                     :

      **Defendants.**    :

## OPINION & ORDER

### I. INTRODUCTION

Before the Court is a Motion for Summary Judgment by Defendants Belmont County Board of Commissioners and Belmont County Department of Job and Family Services (together, the "Defendants"). (ECF No. 71). After Plaintiff Lisa Fijalkowski ("Ms. Fijalkowski") responded to the motion and Defendants replied, Ms. Fijalkowski filed a Motion to Strike New Evidence and Arguments from Defendants' Reply. (ECF No. 78). For the reasons that follow, Defendants' Motion for Summary Judgment [#71] is **GRANTED IN PART** and **DENIED IN PART**, and Ms. Fijalkowski's Motion to Strike [#78] is **DENIED**.

### II. BACKGROUND

Belmont County Department of Jobs and Family Services ("BCJFS") is an agency that operates under the Belmont County Board of Commissioners (the "Board"), which is comprised of three Commissioners. Ms. Fijalkowski" has been employed by BCJFS since 1984, and she has held multiple positions with the agency over her tenure, including union president. From 1999

1

until 2013, Ms. Fijalkowski served as Program Supervisor and Eligibility Referral Supervisor in the department of Public Assistance. (Fijalkowski Dep. 26, ECF No. 65-1).

In April 2013, long-time Director Dwayne Pielech resigned, and the Board advertised for a new director. (ECF No. 76 at 2−3). During this time, the Board was comprised of Commissioners Matt Coffland (a male), Chuck Probst (a male), and Ginny Favede (a female). (*Id.*). Ms. Fijalkowski applied for the Director position but was not selected for an interview. (*Id.*). Instead, the Board named John Rowan as BCJFS director on June 19, 2013, but he abruptly resigned approximately a week after being selected. (*Id.*). In response, the Board searched for an interim director. (*Id.*). Ms. Fijalkowski submits that Commissioner Favede asked her to serve in the interim role and told her that the position was intended to give her a chance to prove herself for the permanent position. (Fijalkowski Dep. 38, ECF No. 65-1). The Board appointed Ms. Fijalkowski to the interim position on August 14, 2013. (ECF No. 76 at 3).

The Board continued its search for a permanent BCJFS Director, this time hiring law firm Clemans Nelson to oversee the search process. (*Id.* at 4−5). Once again, Ms. Fijalkowski applied for the position, and this time, she received an interview. (*Id.*). Clemans Nelson conducted a first round of interviews, and Ms. Fijalkowski and Defendants characterize her ranking among the interviewed candidates differently. (*Compare id.* at 4, *with* ECF No. 76 at 9). Regardless, the Board terminated the firm and abandoned the search altogether in November 2013, when Commissioner Probst resigned and was replaced by Commissioner Mark Thomas (a male). (Coffland Dep. 72, 76, ECF No. 68-1; Probst Dep. Ex. 6, ECF No. 69-1; Favede Dep. 162, ECF No. 70-1).

The Board did not resume its search until several months later, in March 2014, when the Board sent letters to multiple candidates and asking them to apply for the BCJFS Director position. (ECF No. 76 at 9). Ms. Fijalkowski received one of these letters, as did Mr. Vince Gianangeli,

who was serving as Fiscal Director for BCJFS at the time. (*Id.*). Both applied for the position, and both were among the three candidates selected to interview with the Board in April 2014. (ECF No. 77 at 6). Mr. Gianangeli was appointed as the permanent Director following a 2-1 Board vote, with Commissioners Thomas and Coffland voting for Mr. Gianangeli and Commissioner Favede voting against. (ECF No. 71 at 5).

According to Ms. Fijalkowski, Mr. Gianangeli was less qualified for the permanent Director position and was selected due to gender discrimination on the part of Commissioners Thomas and Coffland. (ECF No. 76 at 10). Ms. Fijalkowski thus filed suit in this Court on March 3, 2017, alleging gender discrimination and retaliation in violation of both Title VII and Ohio Revised Code Chapter 4112. (ECF No. 1). She also asserted a cause of action for retaliation in violation of public policy based on Ohio common law in her Amended Complaint. (ECF No. 29). Defendants moved for summary judgment on September 30, 2020. (ECF No. 71). In her Opposition Reply, Ms. Fijalkowski later abandoned her discrimination and retaliation claims under Title VII and Ohio law, except the claims that pertain to Defendants' failure to promote[1] her to the permanent BCJFS Director position. (ECF No. 76 at 2). This matter is fully briefed and now ripe for disposition.

## III. MOTION TO STRIKE

### A. Standard of Review

The Court may, upon motion or on its own, strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are entrusted to the "sound discretion of the trial court, but are generally disfavored." *Yates-Mattingly v. University of Cincinnati*, No. 1:11-cv-753, 2013 WL 526427, at *1 (S.D. Ohio Feb. 11, 2013).

---

[1] Ms. Fijalkowski characterizes this claim interchangeably as a failure to hire and a failure to promote.

Indeed, "[s]triking pleadings is considered a drastic remedy to be used sparingly and only when the purposes of justice so require." *Id.* The Court should not grant a motion to strike if "the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." *Joe Hand Promotions, Inc. v. Havens*, 2:13-cv-0093, 2013 WL 3876176, at *1 (S.D. Ohio July 26, 2013) (internal quotation omitted). Though motions to strike are disfavored when "they serve only to delay," courts may grant motions to dismiss when they expedite cases by removing "unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

Under Rule 56(c), a party may support its position in a summary judgment briefing by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials. . . ." Fed. R. Civ. P. 56(c)(1).

**B. Law and Analysis**

When Defendants replied to Ms. Fijalkowski's opposition to their Motion for Summary Judgment, they attached as an exhibit the affidavit of Commissioner Mark Thomas, which they had not previously cited or relied upon. Defendants primarily offer the affidavit to support their contention that they have articulated a valid rationale for not selecting Ms. Fijalkowski for the permanent Director position. Ms. Fijalkowski argues that the Court should strike the affidavit and related references and arguments, maintaining that it inappropriately raises a new issue. (*See* ECF No. 78 at 2−3).

This Court has held that "a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition." *Newman v. Canyon Med. Ctr., Inc.*, No. 2:13-CV-1007, 2014 WL 4063359, at *1 (S.D. Ohio Aug. 15, 2014) (quoting *In re:*

*FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 581, 599 (N.D. Ohio 2004) ("'[A] reply brief is not the proper place to raise an issue for the first time,' and courts decline to consider newly raised arguments accordingly."). Moreover, Local Rule 7.2(d) provides the following:

> When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted not later than, the primary memorandum of the party relying upon such evidence. *Evidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition.* . . .

S.D. Ohio Civ. R. 7.2. (emphasis added).

Here, Defendants initially argued that they had a valid reason for hiring Mr. Gianangeli over Ms. Fijalkowski in their Motion for Summary Judgment. To satisfy their burden of production, Defendants referred to the deposition testimony of former Commissioners Favede and Coffland, as well as Commissioner Coffland's affidavit. (ECF No. 72 at 1072−73). They also cited records of the Belmont County Board of Commissioners' Office and what they described as Ms. Fijalkowski's inability to produce admissible evidence of pretext. (*Id.* at 1068−71).

When Ms. Fijalkowski responded in opposition, she argued that Defendants had not submitted enough evidence to support their claim of an absence of pretext. Because two votes in favor of hiring Mr. Gianangeli were needed, Ms. Fijalkowski contended that Commissioner Coffland's stated reasons for his vote were insufficient. Defendants addressed this argument in their Reply, in part by including Commissioner Thomas's articulated reasons. In other words, they submitted Mr. Thomas' affidavit to rebut the position that Ms. Fijalkowski argued in her opposition. The Court therefore finds that Defendants' reliance on and inclusion of Mr. Thomas's affidavit in their Reply do not contravene Federal Rule of Civil Procedure 56 or Local Rule 7.2.

Ms. Fijalkowski argues that Defendants' submission of Mr. Thomas's affidavit fails to meet Sixth Circuit standards for two primary reasons. First, she argues that *Scottsdale Insurance*

*Co. v. Flowers* and its progeny prevent Defendants from filing the affidavit at this stage in litigation. *Flowers*, however, involved the issue of whether the district court could properly exercise jurisdiction when it was raised for the first time in the reply brief:

> [The Defendant] failed to properly raise the issue of the propriety of the district court's exercise of jurisdiction with the district court. [Defendant] first raised this issue in her [reply brief]. Procedurally, [Plaintiff] was not afforded a response to this reply. Under *Thurman* and *Pridgeon*, raising the issue in such a motion is untimely. . . . [Defendant's] failure to challenge the district court's decision to exercise jurisdiction until the last minute unfairly prevented [Plaintiff] from presenting a counter-argument to the court.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (internal citations omitted). In this case, Defendants did not raise a novel issue in their Reply, but instead rebutted Ms. Fijalkowski's suggestion that only Commissioner Coffland had a valid rationale in not selecting her for the permanent Director position. Defendants submitted Commissioner Thomas's affidavit to demonstrate that he had similar reasons for selecting Mr. Gianangeli over Ms. Fijalkowski. This argument therefore does not persuade the Court.

Second, Ms. Fijalkowski cites *Gilleland v. Schanhals* and argues that Mr. Thomas' affidavit does not satisfy the conditions it prescribes. The *Gilleland* court provides that the filing of an affidavit in a reply memorandum must satisfy two conditions:

> (1) the affidavit responds only to the nonmoving party's opposition memo, and (2) the nonmoving party has an opportunity to respond. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002) (affirming the district court's consideration of an affidavit filed with a reply memorandum in support of a motion for summary judgment); *see also Fisher v. Trinova Corp.*, No. 96-3918, 1998 WL 774111, at *8 (6th Cir. Oct. 13, 1998) (affirming the district court's consideration of affidavits filed with a reply memorandum in support of a motion for summary judgment because the nonmoving party "had . . . time available to respond to the reply-brief affidavits").

*Gilleland v. Schanhals*, 55 F. App'x 257, 261 (6th Cir. 2003). The Court finds that these conditions are met in this case. As in *Gilleland*, here Mr. Thomas's affidavit responded to Ms. Fijalkowski's memorandum opposing the motion for summary judgment. Additionally, Ms. Fijalkowski had an opportunity to respond to the affidavit; her Motion to Strike serves this very purpose. Accordingly, the Court **DENIES** Ms. Fijalkowski's motion to strike.

## IV. MOTION FOR SUMMARY JUDGMENT

Ms. Fijalkowski raises three causes of action in her Amended Complaint: (1) gender discrimination in violation of Title VII (Count One); (2) gender discrimination in violation of O.R.C. Chapter 4112 (Count Two); and (3) retaliation in violation of Ohio public policy (Count Three). (ECF No. 29). In her Opposition Reply to Defendants' Motion for Summary Judgment, Ms. Fijalkowski abandoned her gender discrimination and retaliation claims in so far as they pertain to discriminatory treatment and discriminatory pay. (ECF No. 76 at 9). Thus, Ms. Fijalkowski's remaining gender discrimination claims are based solely on Defendants' failure to promote. Defendants argue that Ms. Fijalkowski's gender discrimination claims and her public policy claim fail as a matter of law. (ECF No. 71). The Court addresses each argument in turn below.

### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return

a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

## B. Law and Analysis

### 1. Gender Discrimination Claims

Ohio courts "refer to federal case law interpreting Title VII of the Civil Rights Act of 1964" when they review discrimination claims under R.C. Chapter 4112. *Waddell v. Grant/Riverside Med. Care Found.*, 2017-Ohio-1349, 88 N.E.3d 664, 675, *appeal not allowed*, 2018-Ohio-365, 90 N.E.3d 946. Thus, the formula set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to both the federal claims and the Ohio claims in this case. *See Sutherland v. Nationwide Gen. Ins. Co.*, 96 Ohio App. 3d 793, 645 N.E.2d 1338, 1343 (1994).

Under the *McDonnell Douglas* framework, the "plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Waddell,* 88 N.E.3d 664 at 676. The burden then shifts to the employer to "articulate a legitimate, non-discriminatory reason for taking the adverse action." *Reynolds v. Chipotle Mexican Grill, Inc.*, 120 F. Supp. 3d 704, 713–14 (S.D. Ohio 2015). If the employer carries this burden, the plaintiff may then refute the employer's proffered reason by showing that it "is a pretext for discrimination." *Id.* To do so, the plaintiff must present evidence to show that the employer's stated reason "is an attempt to cover up the real discriminatory motive." *McKenna v. Nestle Purina Petcare Co.*, No. C2-05-976, 2009 WL 891747, at *3 (S.D. Ohio Mar. 31, 2009) (citing *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987)).

### a. Prima Facie Case

To establish a prima facie case of discrimination based on a failure to promote using circumstantial evidence, Ms. Fijalkowski must prove: "(1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and denied the

promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied. *Gibson v. MGM Grand Detroit, L.L.C.*, 815 F. App'x 48, 54 (6th Cir. 2020) (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005)). "Establishing a prima facie case is not meant to be an onerous task." *Morningstar v. Circleville Fire & EMS Dep't*, No. 2:15-CV-3077, 2018 WL 1365842, at *9 (S.D. Ohio Mar. 16, 2018) (citing *Reynolds*, 120 F. Supp. 3d at 713–14).

Ms. Fijalkowski asserts that she has established a prima facie case because she has satisfied each of the required elements. First, she is a woman and therefore a member of a protected class. *See Valentine-Johnson v. Roche*, 386 F.3d 800, 814 (6th Cir. 2004) (finding that women are members of a protected class based on sex). Second, she asserts that she was qualified for the Director position because she possessed the required degree and the required number of years of managerial experience. She also notes that the Commissioners invited her to apply for the Director position, which she did. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575−76 (6th Cir. 2003) ("At the prima facie stage, a court should focus on a plaintiff's objective qualifications to determine whether he or she [has] . . . demonstrated possession of the required general skills."). Third, Ms. Fijalkowski was considered for but denied the promotion because she received an interview for the Director position but ultimately was not selected for it. Defendants do not dispute that Ms. Fijalkowski meets establishes the first three elements of her prima facie case.

Ms. Fijalkowski and Defendants appear to disagree about whether the fourth element is met. To assess the candidates' qualifications at the prima facie stage, the Sixth Circuit "compares the qualifications of the two applicants in very general terms," saving a more rigorous analysis "for the later stages of the *McDonnell Douglas* test." *Philbrick v. Holder*, 583 F. App'x 478, 484 (6th Cir. 2014) (citing *Provenzo v. LCI Holdings, Inc.*, 663 F. 3d 806, 813−14 (6th Cir. 2011)). In

*Philbrick*, the plaintiff and the chosen candidate "both had considerable training and experience, both were on the list of 'best qualified' candidates, and both were ranked among the top three candidates" by the search committee. *Id.* On these facts, the Sixth Circuit upheld the district court's determination that the plaintiff had established a prima facie case of gender discrimination based on failure to hire. *Id.*

The facts in this case parallel those in *Philbrick*. Though Ms. Fijalkowski and Mr. Gianangeli possessed different experience and training relative to the BCJFS Director position, each one had considerable experience: Ms. Fijalkowski was serving as Interim BCJFS Director when she applied and had previously served as Eligibility/Referral Supervisor at BCJFS, while Mr. Gianangeli had served as Fiscal Administrator and BCJFS Director. Each candidate also met the position's listed minimum requirements of a bachelor's degree, five years of managerial experience, and two years in a supervisory capacity. Moreover, because the Commissioners invited both Ms. Fijalkowski and Mr. Gianangeli to apply for the BCJFS Director position, the Commissioners presumably considered both individuals to be well-qualified for the position. Finally, both Ms. Fijalkowski and Mr. Gianangeli were among the three finalist candidates being interviewed. (ECF No. 77 at 6). In sum, the Court finds that the two candidates were similarly qualified for purposes of establishing the fourth prima facie element. Ms. Fijalkowski has therefore adduced sufficient evidence to meet her initial burden of establishing her gender discrimination claims based on failure to promote.

### b. Legitimate Nondiscriminatory Reason

Turning to the second *McDonnell Douglas* step, the Court next analyzes Defendants' proffered nondiscriminatory reason for declining to hire Ms. Fijalkowski as Director. Since the employer's burden is one of "production" and not of "persuasion," Defendants meet it by

introducing "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Waddell,* 88 N.E.3d 664 at 676 (internal citations and emphases omitted).

Defendants explain that they selected Mr. Gianangeli over Ms. Fijalkowski for the Director position because he was better qualified. Specifically, they compare Mr. Gianangeli's Master of Business degree to Ms. Fijalkowski's bachelor's degree in psychology, and his role as BCJFS Fiscal Administrator to her role as BCJFS Eligibility Referral Supervisor, which is one level lower on the BCJFS organization chart. They also cite to Mr. Gianangeli's prior experience in administrative and managerial roles for the Ohio Department of Job and Family Services and the Ohio Auditor's Office. To substantiate their allegedly legitimate reason, Defendants offer affidavits from both Commissioners Thomas and Coffland, in which the Commissioners each state their reasons for voting to appoint Mr. Gianangeli to the Director position. Commissioner Coffland, for example, attested that his hiring rationale was based Mr. Gianangeli's superior "experience with BCJFS' budget," his "availability to "perform many of his current fiscal responsibilities in addition to the responsibilities as Director," and his "public speaking and writing abilities," among other reasons. (Coffland Aff., ECF No. 69-4, Ex. 16, ¶¶ 11−12). Commissioner Thomas similarly explained that "Ms. Fijalkowski's resume demonstrated that her education and experience made her less qualified than Mr. Gianangeli" and that the "gender of the three applicants had nothing to do with" his vote. (Thomas Aff., ECF No. 77, Ex. 1, ¶¶ 9, 11). In light of this sworn testimony, Defendants have met their burden in articulating a legitimate, nondiscriminatory reason for their decision not to promote Ms. Fijalkowski.[2]

---

[2] In her Opposition Reply, Ms. Fijalkowski argues that Defendants did not met their burden of production because they only referred to Commissioner Coffland's affidavit in their Motion for Summary Judgment and did not cite to Commissioner Thomas' affidavit. (ECF No. 76 at 12−13). Because the Board's decision required two votes to hire Mr. Gianangeli, Ms. Fijalkowski asserts that Defendants did not offer sufficient

*c. Pretext*

Finally, the Court looks to whether a reasonable jury could find that Ms. Fijalkowski has shown that Defendants' proffered reason is pretextual. Typically, plaintiffs establish pretext by showing either that the proffered reason was not based in fact, that it did not actually motivate the employer's action, or that it was not sufficient to motivate the employer's action. *See Stokes v. Detroit Pub. Sch.*, 807 Fed. Appx. 493, 500 (6th Cir. 2020), *reh'g denied* (Apr. 16, 2020). Ms. Fijalkowski, however, "need not follow these categories rigidly" because plaintiffs "remain free to try to show pretext in whatever way they see fit." *Id.* (internal citations omitted). Her burden at this stage "merges with [her] ultimate burden of persuading the court that [she] has been the victim of intentional discrimination." *Waddell,* 88 N.E.3d 664 at 677. Put differently, the question now before the Court is: Did Defendants decline to promote Ms. Fijalkowski for the stated reason or not? *See Tingle v. Arbors at Hilliard,* 692 F.3d 523, 530 (6th Cir. 2012).

Ms. Fijalkowski cites three main indicators that she argues show the Defendants were at least partly motivated by gender discrimination when they declined to promote her and selected Mr. Gianangeli for the Director role instead: (a) the hiring process was irregular; (b) Mr. Gianangeli was uniquely unqualified for the BCJFS Director position; and (c) Commissioners Thomas and Coffland engaged in a pattern of discrimination against women.[3] This Court examines

---

evidence to articulate a nondiscriminatory reason by the Commissioners as an entity. (*Id.*). Defendants, however, included Commissioner Thomas' affidavit as an exhibit to their Response, so this issue is no longer of concern. *See Wright v. Cent. State Univ.*, No-C-3-97-188, 1999 WL 33117270, at *11 (S.D. Ohio July 9, 1999) (finding that an affidavit included in the defendants' response memorandum was properly filed because it responded to an argument raised by the plaintiff in the reply). !

[3] Ms. Fijalkowski separately raises a fourth factor in her Opposition Reply: that Commissioners Thomas and Coffland pre-selected Mr. Gianangeli for the Director position before the hiring process began. Because Courts in the Sixth Circuit often consider evidence of pre-selection along with evidence of irregularities in the hiring process, this Court combines Ms. Fijalkowski's first and last pretext arguments under subsection (a) below and analyzes them together.

these indicators while keeping in mind that "the legitimacy of the articulated reason for the employment decision is subject to particularly close scrutiny where the evaluation is subjective and the evaluators themselves are not members of the protected minority." *Grano v. Dep't of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983).

### i. Irregularity of the Hiring Process

The Sixth Circuit has found that "evidence of irregularities in the application and selection process" can raise a genuine issue of pretext when combined with other indicators of discriminatory motivations. *Jenkins v. Nashville Pub. Radio*, 106 F. App'x 991, 995 (6th Cir. 2004) (finding that irregularities constitute a factor toward a finding of pretext but are not alone dispositive). Irregularity in hiring includes "the process of posting the position and entertaining applications for it." *Id.* at 994. A plaintiff presents an especially strong irregularity argument when she shows "how the irregularities prejudiced [her] in the selection process or indicate any dishonesty or bad faith" on the part of the Defendants. *Stokes*, 807 F. App'x at 501 (quoting *Briggs v. Potter*, 463 F.3d 507, 516 (6th Cir. 2004)) (internal quotations omitted).

Irregularity in a hiring process also includes evidence that the chosen candidate was preselected for the position, and "preselection alone can refute a defendant's proffered reason." *Stokes*, 807 F. App'x at 503. *See also George v. Youngstown State Univ.*, 966 F.3d 446, 465 (6th Cir. 2020) (allowing for an inference of pretext when the plaintiff's coworker told him that another candidate had been preselected for the job). *See also Kimble v. Wasylyshyn*, 439 F. App'x 492, 497 (6th Cir. 2011) (holding that interview process irregularities and "pre-rejection" of an applicant can support pretext); *Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir. 1986) ("Evidence of preselection operates to discredit the employer's proffered explanation for its employment decision.").

Ms. Fijalkowski cites the start-and-stop approach that the Board used to search for a permanent BCJFS Director as one indicator of irregularity. The Board attempted to fill the position through three separate searches, including one where the Board hired and paid a law firm to conduct the search before the Board abandoned the effort without making a hire. Moreover, Ms. Fijalkowski cites that the Board ultimately selected Mr. Gianangeli for the position despite the fact he had previously declined to apply in the first two rounds of searches.

Additionally, Ms. Fijalkowski argues that the interviews were irregular in the final search. She reports that she was not allowed to discuss her work as interim director during the interview because it would be "unfair" to the other candidates who did not have her experience serving as director. (Fijalkowski Dep. 213, ECF No. 65-1). Commissioner Favede, who participated in the interviews along with Commissioners Coffland and Thomas and the Board's personnel officer, Mike Kinter, explained that she felt that Ms. Fijalkowski and the other female candidate were not fairly considered, in part because they were not given the same opportunity to compete for it during the interview process. (Favede Dep. 103, ECF No. 70-1). Specifically, she cites that Mr. Gianangeli was given an "extensive period of time" to present his plan for running the agency, whereas the female candidates were not. (*Id.*).

Finally, Ms. Fijalkowski asserts that Commissioners Coffland and Thomas pre-selected Mr. Gianangeli before the final search even began. She cites testimony by Commissioner Favede, who said that she believed Commissioners Coffland and Thomas had decided to hire Mr. Gianangeli for the BCJFS Director position in November of 2013. (Favede Dep. 167, ECF No. 70-1). She drew this conclusion based on her interactions and observations with both Commissioners, nearly four months before the formal search for a permanent director resumed.[4] (*Id.*). Additionally,

---

[4] Defendants argue that Commissioner Favede's inference constitutes a "conclusory allegation" and therefore is insufficient to withstand summary judgment, citing *MacDonald v. Union Camp Corp.*, 898 F.2d

Ms. Fijalkowski testified that she witnessed Commissioner Coffland "beg" Mr. Gianangeli to apply for the position but that he repeatedly declined to do so. (Fijalkowski Dep. 96, ECF No. 65-1). She also reports that, on numerous occasions, Commissioner Coffland bypassed her regarding BCJFS business while she was the Interim Director and spoke with Mr. Gianangeli instead. (*Id.* at 89).

Defendants admit that the hiring process was irregular "in that it took multiple attempts to find a qualified candidate" but explain that any irregularity owes to the switch in Commissioners (from Probst to Thomas) and the lack of qualified applicants. (ECF No. 77 at 6). Defendants also highlight the fact that several women were solicited for the position, and the three finalist candidates included two women. Despite this characterization, however, this Court finds that a reasonable jury could conclude that these irregularities cast doubt on Defendants' stated reason for hiring Mr. Gianangeli: that they preferred him because of his superior qualifications. *See George*, 966 F.3d at 466; *Kimble*, 439 F. App'x at 497−501. The extent to which the hiring process points toward pretext must be considered along with the additional indicators Ms. Fijalkowski cites, which the Court analyzes below.

### ii. Qualifications of Ms. Fijalkowski and Mr. Gianangeli

Evidence about the applicants' qualifications "is relevant to the question of pretext." *Stokes*, 807 F. App'x at 502 (6th Cir. 2020) (quoting *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626 (6th Cir. 2006)) (internal quotations omitted); *see also Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981) (finding that "the qualifications of the applicants . . . may be

---

1155, 1162 (6th Cir. 1990) (finding that affidavit statement alleging the employer's reason was "merely a coverup for unlawful age discrimination" did not present a genuine issue of material fact about pretext). The Court finds that Commissioner Favede's statement differs from the statement at issue in *MacDonald* and is better described as a statement of her then-existing state of mind. Moreover, the Court notes that this is not the sole evidence Ms. Fijalkowski submits in favor of her argument for pretext.

probative of whether the employer's reasons are pretexts for discrimination.").The Sixth Circuit assesses qualifications evidence in the context of other evidence of pretext:

> In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former.

*Stokes*, 807 F. App'x at 502 (quoting *Bender*, 455 F.3d at 626).

Typically, qualifications-based arguments at the pretext stage focus on whether one candidate possessed superior qualifications for the job at issue. Here, however, Ms. Fijalkowski does not contend that she was more qualified than Mr. Gianangeli. Instead, she argues that Mr. Gianangeli was "uniquely *un*qualified for the BCJFS Director position based on a series of financial improprieties he was alleged to have committed." (ECF No. 76 at 10).

According to Ms. Fijalkowski, one of these improprieties occurred when Mr. Gianangeli sold a commercial freezer owned by BCJFS to a local social club of which he was a member and his brother was an officer. (Gianangeli Dep. 38−39, ECF No. 67-1). Under Ohio law, county governments may not sell property in such a manner, and the sale precipitated an active investigation by the Ohio Auditor of State, which was ongoing during the hiring process and at the time of Mr. Gianangeli's appointment. (*Id.* at 42, 116). Mr. Kinter, the Board's personnel officer, testified that he did not believe it was appropriate to hire Mr. Gianangeli for the BCJFS Director position while he was under investigation by the state auditor. (Kinter Dep. 29, ECF No. 66-1). Commissioner Favede also felt that these improprieties should have precluded Mr. Gianangeli from the Director position. (Favede Dep., ECF No. 70-1).

Ms. Fijalkowski also alleges that Mr. Gianangeli improperly used county public assistance funds to pay expenses for a political campaign, in violation of campaign finance laws, and that the Board was aware of his actions. (Gianangeli Dep. 28−29, ECF No. 67-1; ECF No. 76 at 11). Additionally, Ms. Fijalkowski recounts that, during her time as Interim Director, the Board learned that Mr. Gianangeli improperly classified two employees and caused their salaries to be paid with federal funds not allocated to their department. (Favede Dep. 58−59, 86−87, ECF No. 70-1; ECF No. 76 at 11−12). Though the Board hired an outside firm, Julian & Grube, to conduct an audit of BCJFS' finances, the Commissioners abruptly terminated the audit as it was nearing completion, shortly after Commissioner Thomas was appointed to replace Mr. Probst. (Coffland Dep. 77−78, ECF No. 68-1).

Ms. Fijalkowski cites two additional pieces of evidence that she says indicate her qualifications for the permanent BCJFS Director position. First, Commissioner Favede testified that  that she believed Ms. Fijalkowski was "the best candidate" due to her seven months of experience as interim director and due to her performance during that period. Favede Dep. 103, ECF No. 70-1). Second, a majority of BCJFS employees presented a petition to the Commissioners recommending that Ms. Fijalkowski be appointed to the permanent position, and many attended a board meeting in April of 2014 to voice their support for her. (Probst Dep. Ex. 14, ECF No. 69-1; Coffland Dep. 133−34, ECF No. 68-1).

Ms. Fijalkowski's burden at the pretext stage is "to demonstrate that Defendants' proffered reason was not the true reason for the employment decision." *George*, 966 F.3d at 465. Although the Court should not question the employer's hiring criteria, even when the hiring process is subjective, the Court must nevertheless consider the candidates' qualifications relative to Ms. Fijalkowski's other evidence of discrimination. *See Stokes*, 807 F. App'x at 502 (quoting *Browning*

*v. Dep't of the Army*, 436 F.3d 692, 698 (6th Cir. 2006). Because there is other probative evidence in this case—including evidence suggesting an irregular hiring process (above) and evidence of gender discrimination by the two male Commissioners (below)—the Court finds that the candidates' qualifications support Ms. Fijalkowski's claims, surviving summary judgment. In light of Mr. Gianangeli's alleged financial wrongdoing and the investigation he faced when the Commissioners selected him over Ms. Fijalkowski, a reasonable juror could discount Defendants' stated reason for hiring Mr. Gianangeli and find instead that it made its decision at least partly based on gender discrimination.

### c. Evidence of Gender Discrimination by the Commissioners

The Sixth Circuit allows plaintiffs to present circumstantial evidence of a "hostile work atmosphere that was condoned by" the employer's decision-makers "because it illustrates the attitudes of those [individuals]." *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) (permitting the plaintiff to establish credibility for her argument that discrimination motived her termination by presenting evidence of racially hostile attitudes among her supervisors). Although "evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff such evidence does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff." *Id.* (quoting *Conway v. Electro Switch Corp.*, 825 F.2d 593, 397 (1st Cir. 1987)). Furthermore, discriminatory comments made by the employer's decision-makers may "establish pretext with respect to . . . unlawful discrimination claims because they cast doubt on the basis in fact of [a d]efendant's proffered legitimate, non-discriminatory reasons." *Bartlett v. Gates*, 421 F. App'x 485, 492 (6th Cir. 2010) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008)).

Ms. Fijalkowski cites circumstantial evidence of a discriminatory atmosphere at BCJFS. For example, Commissioner Favede testified that she felt Commissioners Coffland and Thomas were both hostile toward her because she is a woman. (Favede Dep. 24, 31−32, ECF No. 70-1). At one point, Ms. Favede reported their behavior to Belmont County's attorney, Jeffrey Stankunas, because the way she "was being talked to . . . in [her] capacity as a woman" made her so uncomfortable. (*Id.* at 25). More broadly, Ms. Favede described that Belmont County operated as an "old boys club" and noted that few women were appointed to leadership positions. (*Id.* at 32−34). She also explained that, with respect to the BCJFS Director hiring process specifically, the two female applicants did not have a "fair shot" as compared to Mr. Gianangeli. (*Id.* at 103).

Furthermore, Ms. Fijalkowski herself testified about the biased culture in Belmont County agencies. She reports that she personally witnessed Commissioner Coffland refer to Commissioner Favede as a "cunt" and a "bitch" on numerous occasions. (Fijalkowski Dep. 85−86, ECF No. 65-1). Ms. Favede confirmed that at least one coworker told her that Commissioner Coffland called her the "C word." (Favede Dep. 27, ECF No. 70-1). Ms. Fijalkowski also testified that Commissioner Coffland was generally disrespectful toward women. (Fijalkowski Dep. 193, ECF No. 65-1). Together, these statements and reports of the Belmont County work environment could cast doubt in the jurors' minds on the Defendants' stated reason for selecting Mr. Gianangeli over Ms. Fijalkowski, especially when viewed alongside the other circumstantial evidence she presents.

At the pretext stage of the *McDonnell Douglas* framework, Ms. Fijalkowski can prevail "not just by proving discriminatory animus, but alternatively by casting doubt on the defendant's asserted nondiscriminatory basis." *George*, 996 F.3d at 465 (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000)). This is because "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff

was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153. The Court finds that Ms. Fijalkowski has indeed created as genuine issue of material fact as to whether Defendants' proffered reason for declining to promote Ms. Fijalkowski is pretextual. Because a reasonable jury could conclude that Defendants were actually motivated by unlawful gender discrimination, the Court **DENIES** Defendants' Motion for Summary Judgment with respect to Ms. Fijalkowski's gender discrimination claims.

<u>2. Public Policy Violations</u>

Under Ohio law, an employee may bring a tort claim for wrongful discharge or discipline in violation of public policy. *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St. 3d 228, 228, 551 N.E.2d 981, 982 (1990). The Supreme Court of Ohio recognizes these claims "as an exception to the common-law employment-at-will doctrine." *Bell v. Cuyahoga Cmty. Coll.*, 129 Ohio App. 3d 461, 465, 717 N.E.2d 1189, 1191 (1998). To bring a successful claim, the plaintiff must establish four elements:

> (1) that a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the "clarity element"); (2) that dismissing [or disciplining] employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the "jeopardy element"); (3) the plaintiff's dismissal [or discipline] was motivated by conduct related to the public policy (the "causation element"); and (4) the employer lacked an overriding legitimate business justification for the dismissal [or discipline] (the "justification element").

*Lower v. Elec. Data Sys. Corp.*, 494 F. Supp. 2d 770, 775 (S.D. Ohio 2007) (citing *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 530 (Ohio 2002)). The clarity and jeopardy elements of tort of wrongful discharge in violation of public policy are questions of law, while the causation and justification elements are questions of fact. *Schmauch v. Honda of America Mfg., Inc.*, 311 F. Supp. 2d 631, 634 (S.D. Ohio 2003) (citing *Collins v. Rizkana*, 652 N.E.2d 653, 657−58 (Ohio 1995)).

Ms. Fijalkowski asserts public policy claims under Ohio law based on failure to hire/promote and based on harassment in her Amended Complaint. (ECF No. 29 at 8). In her Opposition Reply, she also raises a public policy violation claim based on demotion. (ECF No. 76 at 31−33). The Court considers each of these three bases below.

*a. Harassment*

Defendants move for summary judgment on Ms. Fijalkowski's public policy claim based on harassment because Ohio courts do not recognize a tort for harassment in violation of public policy. Ms. Fijalkowski does not address this argument in her Opposition Reply. As such, she waives her opposition to this claim. *See Lloyd v. Pokorny*, No. 2:20-CV-2928, 2020 WL 4455547, at *7 (S.D. Ohio Aug. 3, 2020), *appeal dismissed*, No. 20-3928, 2020 WL 7062663 (6th Cir. Nov. 3, 2020) (dismissing plaintiff's claim because she did not address defendants' argument in her response); *Conrad v. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 791 (S.D. Ohio 2019) ("Plaintiff does not refute Defendants' characterization of [the claim], nor does Plaintiff respond in any way to Defendants' argument that this claim should be dismissed. Thus, Plaintiff appears to concede this point and waives opposition to dismissal . . . ."); *Woods v. U.S. Bank Nat'l Ass'n*, No. 517CV2234, 2019 WL 1255229, at *3 (N.D. Ohio Mar. 19, 2019) ("A party waives opposition to an argument by failing to address it in her responsive brief . . . the [c]ourt is not required to consider [the] merits and may grant judgment in [the moving party's] favor."); *Ohio Star Transp., LLC v. Roadway Express, Inc.*, No. 2:09-cv-261, 2010 WL 3666982, at *3 (S.D. Ohio Sept. 14, 2010) ("[The defendant] raises this argument, but [the plaintiff] does not respond, thereby waiving its ability to challenge the argument and effectively conceding the point.").

Even if Ms. Fijalkowski had responded, Defendants' argument is well-taken. Although Ohio recognizes claims for discharge and discipline in violation of public policy, courts in the

Southern District of Ohio have "not found [] any case law which establishes a general common law claim for tortious violation of public policy," including on harassment grounds. *See Woods v. Miamisburg City Sch.*, 254 F. Supp. 2d 868, 877 (S.D. Ohio 2003); *see also Bell*, 129 Ohio App.3d at 465, 717 N.E.2d 1189 (upholding the lower court's dismissal of a harassment-based public policy violation because "[n]either *Greely* nor its progeny have recognized a tort for harassment in violation of public policy"); *Strausbaugh v. Ohio Dep't of Tranp.*, 150 Ohio App.3d 438, 782 N.E.2d 92 (10th Dist. 2002) ("*Greely* [] claims are limited to employee-at-will situations that involve discharge or disciplinary action."). Because Ohio courts do not recognize a tort of violation of Ohio's public policy for harassment, Ms. Fijalkowski's claim for violation of such a tort fails as a matter of law. Defendants' Motion for Summary Judgment is therefore **GRANTED** with respect to this claim.

### b. Failure to Promote/Hire

Similarly, Ohio does not recognize a public policy tort claim for failure to promote or failure to hire. *See Woods*, 254 F. Supp. 2d at 877 ("[T]his Court has not found [] any case law which establishes a general common law claim for tortious violation of public policy. To the contrary . . . Ohio courts have repeatedly rejected attempts to expand that claim beyond the discharge of an at-will employee."); *Bools v. General Elec. Co*, 70 F. Supp. 2d 829, 832 (S. D. Ohio 1999) ("[O]ur review of Ohio law finds no case extending the public policy tort to claims involving a wrongful failure to hire or retaliation.").

To support her argument that a valid claim for wrongful denial of a promotion exists in Ohio, Ms. Fijalkowski primarily relies on a case by the Ohio court of appeals, *Powers v. Springfield City Schools.* 1998 Ohio App. LEXIS 2827 (Ohio Ct. App. 1998).[5] The *Powers* court

---

[5] Ms. Fijalkowski also cites *O'Cull v. Deerfield Mfg.*, No. C-1-02-557, 2004 U.S. Dist. LEXIS 30227 (S.D. Ohio May 3, 2004) to support her argument. The *O'Cull* court, however, did not consider whether Ohio

found that "a claim for wrongful denial of promotion is a 'logical and necessary extension' of the law of wrongful discharge" and concluded that an Ohio common law allows plaintiffs to bring claims for wrongful denial of a promotion in violation of public policy. *Id.* at *17−18.

The Sixth Circuit, however, has since ruled in *Evans v. Toys R Us, Inc.*, 221 F.3d 1334 (6th Cir. 2000), that this Court may not rely on *Powers*. The *Evans* plaintiff similarly relied on *Powers* to argue that Ohio recognizes public policy claims for failure to promote. The district court disagreed, refusing "to expand Ohio law to include a failure to promote as an actionable underlying claim for tortious violation of public policy" and granting summary judgment to the employer. *Evans v. Toys R Us-Ohio, Inc.*, 32 F. Supp. 2d 974, 990 (S.D. Ohio 1999). On appeal, the Sixth Circuit upheld the district court's decision:

> The district court correctly concluded that Evans could not prevail on his public policy claims under Ohio law because Ohio courts do not recognize policy claims for failure to promote. Evans cites an Ohio court of appeals's unpublished opinion in *Powers v. Springfield City Sch.,* No. 98-CA-10, 1998 Ohio App. LEXIS 2827 (June 26, 1998), to refute the district court's conclusion that there is no Ohio precedent authorizing the federal courts to extend the public policy tort to a failure to promote claim. In reaching its conclusion that only claims of wrongful discharge or discipline are actionable in tort as violations of Ohio public policy, the district court relied upon two leading cases in which the Ohio Supreme Court outlined the contours of the "public policy exception to the employment-at-will doctrine. . . .
>
> The *Powers* case that Evans cites on appeal does not show that the district court erred in its assessment of Ohio law because a more recent appellate court decision disagrees with *Powers. See Doneworth v. Blue Chip 2000 Commercial Cleaning, Inc.,* No. C-970379, 1998 Ohio App. LEXIS 317 (July 10, 1998) . . . Based on the Ohio appellate court's holding in *Doneworth* and the lack of reported precedent

---

allows a public policy claim based on a failure to hire or failure to promote. Instead, the court stated: "The Court questions whether Plaintiff may pursue a public policy claim in view of the remedies available to him under the federal and state anti-discrimination statutes. The Court will not, however, dismiss the public policy claim at this time but cautions Plaintiff that he may not obtain a double recovery. . . ." *Id.* at *24. Since the circumstances of the *O'Cull* case differ significantly from those in the case sub judice, this Court finds this argument to be unpersuasive.

allowing plaintiffs alleging failure to promote to recover for violations of Ohio public policy, we conclude that the district court properly refused to recognize Evans's claims as actionable under Ohio law.

*Evans*, 221 F.3d at 1334. This Court similarly declines to extend Ohio law to include a failure to promote as an actionable underlying claim for tortious violation of public policy. Accordingly, the Court **GRANTS** summary judgment to Defendants on this claim.

### c. Demotion

In her Amended Complaint, Ms. Fijalkowski alleged that Belmont County "appointed [her] to fill the BCJFS Director position on an interim basis," that several individuals within Belmont County leadership recommended her for the permanent position, and that Mr. Gianangeli was selected instead. (ECF No. 29 at ¶¶ 14, 22, 35). She also reported that "Defendants and Gianangeli transferred [her] to a demeaning position performing menial tasks with no direct reports" after she was not hired to be the permanent BCJFS Director. (*Id.* at ¶ 36). Although this statement contains an implied allegation of demotion, Ms. Fijalkowski did not assert demotion as a basis for her public policy claim in her Amended Complaint. Instead, she only alleged the following: "Defendants maliciously and willfully retaliated against Plaintiff by failing to hire her as BCJFS Director and by harassing her and creating a hostile workplace." (*Id.* at ¶ 66). Ms. Fijalkowski did not raise her demotion-based public policy violation claim until her Opposition Reply. Defendants protest that she may not present a legal theory for the first time in response to a properly-support motion for summary judgment.

The Sixth Circuit has made clear that a "a party may not expand its claims to assert new theories in response to a motion for summary judgment." *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007); *see also In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 905 F. Supp. 2d 814, 831 (S.D. Ohio 2012)*, aff'd sub nom., Pharos Capital Partners, L.P.*

*v. Deloitte & Touche*, 535 F. App'x 522 (6th Cir. 2013). This is because "[a] party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories . . . ." *Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957 (6th Cir. 2007) (quoting *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) (finding that the district court properly disregarded claims that were raised by the plaintiff in her brief opposing the defendant's motion for summary judgment). Because Ms. Fijalkowski raised the demotion theory of her public policy violation claim for the first time in her brief opposing Defendants' Motion for Summary Judgment, the Court will not consider them.

Accordingly, no genuine issue of material fact exists that Defendants wrongfully discharged or disciplined Ms. Fijalkowski in violation of public policy. Defendants' Motion for Summary Judgment on Ms. Fijalkowski's public policy claim is, therefore, **GRANTED**.

## V. CONCLUSION

For the reasons set for the above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to for Summary Judgment [#71]. The Court hereby **DISMISSES** Count Three of the Amended Complaint. Additionally, the Court **DENIES** Ms. Fijalkowski's Motion to Strike [#78].

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: May 17, 2021**